Garsh, J.
The plaintiff, City, Hayes, Meagher & Dissette, P.C. (“City, Hayes”), a law firm, commenced this action against the defendant, Lionel Rotcajg (“Rotcajg”), a former client. On October 6, 1997, the defendant purportedly was served in hand. The plaintiff then served the tracking order on Rotcajg by mail. No answer or other response was filed by Rotcajg, and the defendant, accordingly, was defaulted pursuant to Mass.R.Civ.P. 55(a). The scheduling of a hearing for assessment of damages followed with notice to the defendant mailed to his address in the Bahamas. In response, Rotcajg filed an Opposition to Application for Default,[1] and an evidentiary hearing was held on the defendant’s claim that he had not been served. Three witnesses testified at the hearing.
For the following reasons, plaintiffs motion for entry of judgment by default is denied.
FINDINGS OF FACT
Based on all the credible evidence and reasonable inferences drawn from that evidence, the court finds the following facts:
City, Hayes represented Rotcajg on federal criminal charges. At some point, William Brown, Esq. (“Brown”)[2] took over the representation of Rotcajg, and City, Hayes commenced this civil action against Rotcajg for unpaid attorneys fees.
On October 6, 1997, Brown, his client Rotcajg, and Philip DiDomenico, Esq. (“DiDomenico”), an attorney affiliated with City, Hayes, were standing outside a courtroom on the twelfth floor of the federal courthouse in Boston, Brian McGaffigan (“McGaffigan”), a constable, had been instructed by the plaintiff to serve Rotcajg “in hand.” An attorney from City, Hayes pointed Rotcajg out to McGaffigan as DiDomenico, Brown, and Rotcajg stood outside the courtroom. McGaffigan approached the trio, handed DiDomenico an envelope, which DiDomenico took and put in his coat pocket, and then McGaffigan asked him if he were Rotcajg. At no time did McGaffigan state to Rotcajg that he was attempting to serve process upon him. The two attorneys and Rotcajg walked into the courtroom where Rotcajg pled guilty to creating a disturbance in an airplane.
Because the plaintiff was concerned that McGaffigan had not made proper service, McGaffigan returned to his office, made additional copies of the summons and complaint, and once again entered the federal courthouse to serve Rotcajg. As Brown, DiDomenico, and Rotcajg came out of the courtroom, McGaffigan approached them and silently held out an envelope in Brown’s direction. Once again McGaffigan did not announce that he was attempting to serve process on Rotcajg. Biown took the envelope without McGaffigan making any protest. After Brown took the envelope, McGaffigan said, “There, now you’ve been served,” and McGaffigan departed.
Rotcajg asked Brown, “What’s that?” Brown replied, “Well that’s probably an example of improper service." Brown suspected, but did not know, that Ciiy, Hayes was attempting to effect service on Rotcajg because he had earlier seen the other attorney from City, Hayes in the vicinity of the courtroom. Prior to taking the envelope from McGaffigan, Brown did not advise Rotcajg that anyone was attempting to effect service upon him. I do not draw the inference that DiDomenico said anything to Rotcajg about the envelope earlier handed to DiDomenico by McGaffigan. Brown put the envelope he had taken into a folder and has never discussed its contents with Rotcajg or forwarded it to Rotcajg.
Rotcajg did not know that McGaffigan was attempting to serve process upon him. After Brown took the envelope and after he spoke with Brown, Rotcajg did not know that McGaffigan was attempting to serve process upon him, but had reason to so suspect. Rotcajg did not knowingly refuse to accept process. He did not lie or take any steps to deceive the process server about his identity.
McGaffigan filed a return of service which certifies that, on October 6, 1997, he served a copy of the summons and complaint upon Rotcajg “by giving [process] in hand to the within named defendant” at the federal courthouse. The certificate is inaccurate.[3]
RULINGS OF LAW
The return of service is prima facie evidence that the defendant was served. Johnson v. Witkowski, 30 Mass.App.Ct. 697, 714, rev. denied, 411 Mass. 1104 (1991). As such, it is rebuttable by testimony to the *256 contrary. Trager v. Webster, 174 Mass 580, 581 (1899). Here, the constable himself conceded at the hearing that, contrary to his return, he did not give any document in hand to Rotcajg.
Rule 4 of the Massachusetts Rules of Civil Procedure provides, in relevant part, that service shall be made “[u]pon an individual by delivering a copy of the summons and of the complaint to him personally . . .” Mass.R.Civ.P. 4 (d)(1). McGaffigan did not deliver a copy of the summons and complaint to Rotcajg personally within the meaning of the rule because he placed the process first in the hands of DiDomenico and then in Brown’s hands. A plaintiff cannot serve initial process on an attorney for a party unless the attorney agrees to accept service after being authorized to do so by the client/defendant. In re Kouterick, 161 B.R. 755, 759 (Bnkr. D.N.J. 1993). An attorney is not authorized to accept service of process solely by virtue of the attorney’s status as counsel. United States v. Ziegler Bolt and Parts Co., 883 F.Supp. 740, 749 (Ct. Int’l Trade 1995), aff’d, 111 F.3d 878 (Fed. Cir. 1997). ”[M]ere acceptance of service does not evidence the authority to accept service on behalf of the principal.” Id. at 748. There are no facts from which an inference can be drawn that either Brown or DiDomenico were authorized by Rotcajg to accept service, and City, Hayes does not so contend.
Instead, the plaintiff argues that to effect personal service, the constable was not required to make in hand delivery as long as he left the process in the defendant’s general vicinity. However, each of the three cases on which the plaintiff relies, Novak v. World. Bank, 703 F.2d 1305 (D.C. Cir. 1983); Errion v. Connell, 236 F.2d 447 (9th Cir. 1956); and Roth v. W.T. Cowan, Inc., 97 F.Supp. 675 (E.D.N.Y. 1951), are readily distinguishable. In Novak, 703 F.2d at 1310, n. 14, for example, the court simply noted, in dictum, that ”[w]hen a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person.” Rotcajg did not refuse to accept service; McGaffigan did not announce to Rotcajg that he was there to serve process upon Rotcajg, and McGaffigan did not leave the papers near the defendant, but rather delivered them to someone other than the defendant. In Errion, 236 F.2d at 457, service was found to have been proper when the process server threw the papers through a hole in screen door to the defendant’s apartment, saw the defendant, spoke to her, and told her brother that he was making service on her when she ducked behind a door. In the instant case, service was not left on the private property — real or otherwise — of the defendant; Rotcajg did not take any affirmative steps to avoid service, and McGaffigan did not tell Rotcajg that he was attempting to serve him.
Finally, Roth, 97 F.Supp. at 677, deals with a defendant who deliberately lied about his identity to the process server in an attempt to evade service; the process server was found to have effected personal service when he thereafter left an envelope containing notice on the front seat of the defendant’s vehicle where the defendant almost immediately found and opened it. Had the defendant in Roth not lied about whom he was, “traditional personal service could have been effectuated by touching him with the papers." Id. In the instant case, by contrast, nothing stopped McGaffigan from touching Rotcajg with the papers. Even under McGaffigan’s version of what transpired, he did not try to touch Rotcajg with the process or announce to Rotcajg that he was trying to serve process upon him; rather, McGaffigan testified that he walked up to DiDomenico, Brown and Rotcajg, said “Lionel Rotcajg?” to Rotcajg, extended his hand out with the papers, and when no one replied to his query, simply deposited them on a nearby bench without revealing his identity or purpose. The court in Roth analogizes the situation of a process server confronted with a defendant who lies about his identity with the situation “where a process server attempts to touch the party to be served with the process, is unable to do so, and drops it on the floor near the person evading service.” Id. The process server in the instant case was confronted with neither situation. After the partner from City, Hayes pointed Rotcajg out to McGaffigan, McGaffigan did not walk up to Rotcajg and touch him with the process, and McGaffigan did not advise Rotcajg that he was attempting to serve him with process.
Before process can simply be left near the defendant, “ [i]t is imperative ... that the defendant be made aware that he or she is in fact being served with process.”[4] Coyne v. Besser, 546 N.Y.S.2d 129, 130 (1989) (service not valid when process left on chair in reception area of doctor’s office after process server called out doctor’s name as he walked through waiting room to his inner office, but did not inform doctor, or otherwise put doctor on notice, that he had process to serve). See also Flex Credit, Inc. v. Winkowitsch, 428 N.W.2d 236, 239 (N.D. 1988) (service proper when the defendants refused to accept service, and the process server placed the documents in their general viciniiy inside their residence and informed them he was doing so); Nielsen v. Braland, 119 N.W.2d 737, 739 (Minn. 1963) (when process server touched the defendant with summons, which was then laid in place easily accessible to defendant, service was adequate although defendant refused to pick up the process or accept service). Here, McGaffigan took no steps to make Rotcajg aware that he was attempting to serve him with process.
While “personal service should not become a ‘degrading game of wiles and tricks’ nor should a defendant be able to defeat service simply by refusing to accept the papers . . . ,” Wood v. Weenig, 736 P.2d *257 1053, 1055 (Utah App. 1987), neither should a plaintiff be able to maintain a suit based upon personal service when the constable has done nothing more than hand process to an individual other than the defendant. The plaintiff is not entitled to entry of default judgment because the constable did not personally serve Rotcajg with the summons and complaint.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for entry of default judgment be DENIED; it is further ORDERED that the default which has entered against the defendant be VACATED, that the plaintiff be allowed an additional ninety days to serve the defendant, and that the complaint be dismissed without prejudice on May 26, 1998 unless proof of service has been filed or a motion to extend the time for service has been allowed.

 The Opposition to Application for Default has been deemed to be an opposition to entry of judgment by default under Mass.R.Civ.P. 55 (b).

 I find Brown to be entirely credible.

 Indeed, even were McGaffigan’s testimony to be credited, the certificate would still be inaccurate since McGaffigan now says that he did not gave any papers to Rotcajg in hand, but instead placed them on a bench close to where Rotcajg was standing.

 At a minimum, service must comport with the requirements of due process. Due process principles require notice to be reasonably calculated to apprise the interested parties of the pendency of the action and afford an opportunity for the parties to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).